The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Telephone: (646) 666-8262; Fax: 1-(877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com/www.luchaportusderechos.com



November 17, 2016

In Re:  Nelson v. City of N.Y., et al., No. 16 Civ. 234 (AJN)

Dear Judge Nathan:

  I represent Plaintiff Tyson Nelson in the above-captioned Section 1983 action alleging, inter alia, false arrest, excessive force, unlawful search, malicious prosecution, denial of a fair trial and a Monell claim.  I respectfully refer the Court to Mr. Nelson's Amended Complaint for a description of the facts supporting his claims.  Docket No. 24.  I write to ask the Court to compel Defendants to produce the herein discussed discovery.  The Parties have met and conferred but we have been unable to resolve these disputes through informal conference.  In the event that the Court finds one or more of these topics to require information beyond what the page limit has permitted me to here share (I also ask the Court's forgiveness for exceeding the page limit by part of a paragraph), Plaintiff respectfully requests a schedule to prepare briefing.

  **I.** **Kel Records, Transcripts And Recordings**

  Discovery shows that Defendants used Kel equipment to perform their operation, which permits recording of a street operation through a body transmitter and vehicle receiver.  See, e.g., Jean-Laurent v. Bowman, No. 12 Civ. 2954 (KAM)(LB), 2014 WL 4662221, at *4 (E.D.N.Y. July 7, 2014) (describing the use of Kel equipment and discussing that a plaintiff may be entitled to adverse inference jury instruction due to failure to maintain Kel recording); Steward v. City of N.Y., No. 06 Civ. 15490 (RMB) (FM), 2008 WL 1699797, at *1 (S.D.N.Y. Apr. 9, 2008) (describing the use of Kel equipment as an investigator in nearby vehicle videotaped the parties' interactions).  Defendants have objected to producing these records, but Plaintiff contends that their production is required under Local Rule 83.10 as an equivalent and/or supplement to radio run reports.[1]  Alternatively, Plaintiff argues that Defendants must produce them now in expanded post-Plan discovery as responsive to Plaintiff's discovery requests for, among other things, Party and non-party statement records relating to the incident.[2]

  **II.** **Roll Calls, Roll Call Adjustments, Vehicle Assignment Sheets**

  Plaintiff alleges that different combinations of Individual Defendants violated his rights at different stages of his processing, and has thus sought Roll Calls in discovery to aid in officer identification.  Among other things, Roll Calls reveal officer partner information during a given tour, and the City regularly produces these records in Section 1983 discovery for officer identification purposes.  See Charles v. City of N.Y., No. 11 Civ. 2783 (AT) (RLE), 2015 WL 756886, at *4 (S.D.N.Y. Feb. 20,

---

[1] No radio run reports have been produced, either.  Defendants object to producing these Plan-required documents stating, among other things, that they are not relevant (which the Plan already determines they are), that they implicate privacy interests of non-parties (which the Confidentiality Order addresses), and more.

[2] Plaintiff notes that the DA's Office noticed the existence of recordings for use at trial.  It is not clear whether the DA's Office was referring to Kel recordings, but it stands to reason that they may be.

2015) (considering a sanctions motion relating to defendants' post-discovery production of roll call); Rodriguez v. City of N.Y., No. 10 Civ. 9570 (PKC) (KNF), 2012 WL 178032, at *2 (S.D.N.Y. Jan. 18, 2012) (noting defendants' production of roll call to aid in identification of officers); Cruz v. City of N.Y., No. 02 Civ. 8672 (LAP), 2007 WL 1223225, at *1 (S.D.N.Y. Apr. 25, 2007) (noting the defendants' production of roll call and its role in providing a list of involved parties).

The relevance of Vehicle Assignment Sheets is similarly described, i.e., they link officers to vehicles and each other. Furthermore, the Vehicle Assignment Sheets are important because Plaintiff knows the police vehicle that housed the Kel receiver, and the Sheets will connect specific officers to it.

### III. Records Showing The Movement Of Vouchered Items, And Cell Phone Forensics

Plaintiff requests, over Defendants' objection, records showing the movement of his vouchered cell phone, $9 USD and the vouchered plastic bag, and records relating to cell phone forensics. By way of background, when property or evidence is recovered in connection with an arrest, it is vouchered then becomes part of the Property Clerk Division's ("PCD") Property and Evidence Tracking System ("PETS"). Through bar-code technology, PETS records identify, locate, route and track evidence as it moves from one NYPD staging location (for example, precinct, warehouse, lab) to another.[3]

Plaintiff's need for the PETS records has to do with Defendants' story as to how Mr. Nelson came to work as Moody Lewis's lookout. Defendants claim that Mr. Lewis telephoned Mr. Nelson and asked him to come to the scene with narcotics; that Mr. Nelson, despite being ordered up for this purpose, became surprised when Defendant UC 254 walked up to the men to buy narcotics; that Mr. Nelson, despite being caught off guard by UC 254's arrival, had for some reason already given Mr. Lewis the narcotics to sell to UC 254; that Defendants were reasonable in interpreting Mr. Nelson's continuing on his way to be "lookout work" (after night fell) in light of their simultaneous claim that Mr. Lewis said that Mr. Nelson himself sold narcotics; and that when Defendants arrested and searched Mr. Nelson on the scene, they only found him to have a measly $9 USD in his pocket.

Given all this, it stands to reason that if Defendants' allegations were true, incredible though they may seem, then Mr. Nelson's and Mr. Lewis's telephone call registers contained important evidence for Defendants to collect, examine and preserve for the prosecution. As a result, Plaintiff respectfully requests that the Court compel Defendants to produce PETS records showing the movement of Mr. Nelson's and Mr. Lewis's cell phones from the precinct to the computer crimes or equivalent unit for extraction of data through cell phone forensics. Relatedly, to the extent that the NYPD analyzed the cell phones, Plaintiff respectfully requests that the Court compel Defendants to produce the cell phone forensic records as they relate to both telephones.

### IV. Disciplinary Records, Performance Evaluations, Information Re: Number And Disposition Of State Civil Rights Lawsuits And Force Monitoring Records

---

[3] See, e.g., New York City Police Department Successfully Implements A Property And Evidence Tracking System, https://www.se.capgemini.com/resource-file-access/resource/pdf/nypd_successfully_implements_property_and_evidence_tracking_system_0.pdf (last accessed Nov. 17, 2016).

Plaintiff has requested, and Defendants have refused to provide, Defendants' relevant disciplinary files and force-monitoring records.  Plaintiff notes that Local Rule 83.10 required the production of the latter category of records long ago, and Plaintiff asked for them prior to the mediation.  See Section 1983 Plan, Section 5.a.iii.  As to Defendants' disciplinary files, Local Rule 83.10 already aids the Parties in identifying what the Court considers to be relevant in terms of early index production.  See Section 1983 Plan, Section 5.a.iii.  Using these admittedly relevant disciplinary events as a starting point, Plaintiff generally requested that Defendants produce the underlying files and specifically flagged certain disciplinary events of unique interest, for example, at least one transfer for cause, making false statements to an ADA, performance evaluations so negative they are remarked upon, failure to keep required records, and more.

Courts regularly find that records such as these are relevant and subject to production in Section 1983 discovery.  To the extent Defendants claim privacy interests in the information that preclude their release, Local 83.10 binds the Parties to a confidentiality order to address that concern in the face of liberal federal discovery.  See Chavez v. City of N.Y., 939 N.Y.S.2d 739 (Table), 2011 WL 5084661, at *4-5 (N.Y. Sup. Ct., N.Y. Cty., Sept. 26, 2011) (string citing the many cases ordering officer disciplinary and personnel files in the context of civil rights cases).  Plaintiff argues that Defendants improperly claim that Plaintiff can make no permissible use of the records at a trial on their individual liability.  This argument addresses admissibility pursuant to, for example, Rule 404(b), but in discovery Plaintiff's entitlement to relevant records focuses on relevance.  In federal discovery relevance is broad and the Court has already, with the publication of the Plan, identified to the bar which disciplinary events it considers relevant.  Now that the Parties have moved out of limited Plan discovery, Plaintiff seeks related records.

## V.   Use Of Force, PRBM And Strip Search Protocols And Records

This category of requested records seeks information about the kinds of records that Defendants and non-parties working alongside them were bound to create to record the use of force against Mr. Nelson, and the records themselves.  At this writing, discovery has revealed that the use of force that Defendants used upon Mr. Nelson is mentioned in a fleeting reference on the Omniform Arrest form.  Plaintiff contends that protocols in place at the time required Defendants to produce additional records to track the use of force.  Plaintiff also seeks similar PRBM and strip search records.  Defendants informed Plaintiff that if he sought information regarding protocols for use of force and/or protocols for recording use of force, they would move for judgment on the pleadings on Plaintiff's Monell claim.  First, Plaintiff believes that these records are relevant to his claims of individual officer liability and municipal liability such that the Court need not reach the latter question.  Second, Plaintiff was under the impression that Monell discovery was bifurcated in this case.  If that is not true, then Plaintiff does request these records under his individual and municipal theories of liability.  Finally, if procedurally necessary in light of Defendants' claim that a FRCP 12(c) motion will be filed to preclude certain discovery, Plaintiff respectfully requests that the Court set a briefing schedule for Defendants' FRCP 12(c) objection to his discovery requests at the next conference.

## VI.   Moody Lewis Records

In addition to Plaintiff, Moody Lewis was arrested during the incident. This is central to the dispute because Moody Lewis is the pivot around which the Parties' respective arguments revolve. Plaintiff argues that Defendants unreasonably held what Moody Lewis did against him, while Defendants argue that they reasonably interpreted Plaintiff to be a part of the Moody Lewis affair. Thus, the Moody Lewis file and its contents should be provided to Plaintiff for use in this action even assuming, arguendo, it is sealed (Defendants have thus far been unable to say). The broad remedial purposes of federal civil rights law generally counsels against liberal reliance upon state privacy rules to frustrate federal discovery. See Atwell v. City of New York, No. 07 Civ. 2365 (WHP), 2008 WL 5336690 (S.D.N.Y. Dec. 15, 2008). Even still, Plaintiffs have some burden of production and persuasion to unseal the Lewis records. They argue that the intent behind New York Criminal Procedure Law Section 160.50—to lessen the adverse consequences of unsuccessful criminal prosecutions—would not be served by keeping the third-party records sealed here. That is because Mr. Nelson already knows Mr. Lewis's identity; that Lewis was arrested alongside Mr. Nelson; and that the charges against Mr. Lewis were dismissed as well (at least Plaintiff assumes this is true, in light of Defendants' failure to produce the Lewis file). At the same time, Plaintiff contend that he has established a particularized need for the Lewis file given the many additional Party and non-party statements about the incident.

Sincerely,

*Ryan Lozar*

Ryan Lozar
Attorney for Plaintiff