The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Telephone: (646) 666-8262; Fax: 1-(877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com/www.luchaportusderechos.com

December 28, 2016

In Re:  Nelson v. City of N.Y., et al., No. 16 Civ. 234 (AJN)

Dear Judge Freeman:

      I represent Plaintiff Tyson Nelson in the above-captioned Section 1983 action alleging, inter alia, false arrest, excessive force, unlawful search, malicious prosecution, denial of a fair trial and a Monell claim.  As the Court knows, on December 12, 2016, it held a telephone conference with the Parties to discuss certain discovery disputes.  Because most of the disputes were resolved amicably during that conference, the Court set a follow-up conference for December 29, 2016, at 11:00 a.m.  The Court asked the Parties to confer with one another in the interim in an effort to further narrow the disputes.  In this letter, I seek to provide the Court with a status update by (1) summarizing already resolved disputes, see Section I; (2) identifying ongoing disputes, see Sections II and III.[1]  Finally, in Section IV, I mention that the Parties anticipate discussing the pretrial schedule with the Court during the December 29 conference.  I should stress that this is Plaintiff's status letter and I indicate Defendants' positions herein as appropriate.

## I.  Resolved Discovery Issues

The following items were discussed during the December 12, 2016, telephone conference and I list them here only by way of reminder and summary.  Docket No. 51.  I provided this list to Defense Counsel for review so that she could make any objections thereto before I filed this letter.

- Defendants will search for Kel records, transcripts and/or recordings, and to produce the same to Plaintiff to the extent that they exist.
- Defendants will produce roll calls and roll call adjustments because although a Tactical Plan already produced shares the identities of the Defendants and other NYPD Officers at the scene of the false arrest and first use of force, Plaintiff alleges that there were NYPD Officers who were not identified on the Tactical Plan who either participated in and/or were witnesses to the second use of force and the strip search at the precinct.
- Plaintiff withdraws his request for the Vehicle Assignment Sheet with leave to renew.  Plaintiff has agreed to this approach because Defense Counsel rightly pointed out that Party deponents will likely be able to answer this question as there were a limited number of officers who were in the vehicle with the Kel receiver.  Furthermore, the production of Kel records may identify the officer in the vehicle that had the Kel receiver.
- Defendants will produce records showing the movement of Plaintiff's vouchered cellular telephone.  Plaintiff has shared with Defense Counsel a record of this ilk.  Plaintiff withdraws his request for chain-of-custody records relating to other items seized from him during the arrest, i.e., Metrocard and/or the $9.00 USD.  Relatedly, if the chain-of-custody records for the

---

[1] It should be noted that this status letter focuses on the issues raised with the Court during the December 12, 2016, conference.  The Parties are managing other discovery matters separately as they have not (and at this writing still do not) need the Court's intervention.

- cellular telephone show that it was transported to a Computer/Telephone Crimes Unit or equivalent unit, Defendants will produce records relating to any forensic analysis performed upon the cellular telephone.
- Plaintiff agreed that he will subpoena the Moody Lewis records from the Criminal Court and/or the District Attorney's Office. At present, it is believed that Mr. Lewis was convicted of some criminal offense such that these records have not been sealed pursuant to N.Y. C.P.L. Section 160.50. As discussed at the conference, Plaintiff already has his own DA file; however, it is not clear whether Mr. Lewis's would be co-extensive and it may of course contain relevant Party and non-party statements.
- Defendants agreed that they will produce Defendants' force monitoring records in according with Local Rule 83.10 (to the extent they exist).
- Defendants agreed that they will produce Defendants' performance evaluations. Defendants agreed that they will disclose to Plaintiff the disposition of Defendants' state civil rights lawsuits to the extent that this information is included in Defendants' personnel files. In the event that Defendants' personnel files do not record the fact and/or result of instances in which they have been sued for violating an individual's civil rights, Plaintiff's Counsel will seek such information in the various local Supreme Courts. In addition, Plaintiff's Counsel will himself pursue information relating to Defendants' federal civil rights lawsuits.

## II.   Outstanding Discovery Issues Relating To Disciplinary Records

During the December 12, 2016, conference, the Court instructed the Parties to meet and confer regarding disciplinary record disputes and report back to the Court in advance of the December 29, 2016, conference. The Parties have so conferred and I share this status update. I will first state Plaintiff's position, then Defendants' position.

At this writing, Plaintiff has disciplinary indices for three of the eight named Defendants and these provide the backdrop for the Parties' meet and confer. the Court's and the Parties' handling of these initial three Defendants' disciplinary records will guide the Parties' general handling of the balance of the Defendants' material.

First, Plaintiff has received Central Personnel Indices and CCRB Summaries to date. Plaintiff has also requested that Defendants produced IAB Summaries.

Next, using the existing indices' unredacted matters as a guide, Plaintiff has proposed a two-track approach to the production of records. As to the first track, Plaintiff has drafted a list of matters for which he would like full files. Plaintiff identified these matters with reference to the seriousness of the misconduct allegations, which manifested in substantiated charges and investigations, poor performance evaluations, and/or transfers of an individual for cause.[2]

---

[2] If the Court finds these descriptions too vague to be meaningful, I will provide additional detail to the Court during our conference. For the purposes of this letter I have not included great detail due to concerns about confidentiality.

For the balance of the disciplinary records, Plaintiff agreed that he will first accept a summary report before seeking the full underlying file. In the event that Plaintiff, upon reading a particular summary report, wants the full underlying file, Plaintiff proposes that he then be able to make that request. If Defendants dispute Plaintiff's request, then the Parties can litigate the dispute at that time.

Plaintiff would like to stress that although he is willing to agree to accept preliminary summary report productions in many unsubstantiated matters without prejudice to requesting the full files later, the very nature of unsubstantiated findings should not impact Plaintiff's entitlement to records as much as Defendants have implied. That is because the government will deem a complaint about police officer misconduct "unsubstantiated" when there is "no neutral witness who could verify the version of either the officer or the civilian." Vann v. City of N.Y., 72 F. 3d 1040, 1045 (2d Cir. 1995) (noting testimony regarding the significance of an unsubstantiated allegation). In other words, Defendants seem to imply that an "unsubstantiated" designation may be conflated with a not-guilty or exonerated disposition, but that is simply not true, and Plaintiff should in fact be permitted to explore and consider unsubstantiated complaints with as much vigor as substantiated complaints.

Defendants' position is that they will produce only summary reports to Plaintiff. Defendants state that Plaintiff's request for the full underlying disciplinary files should be denied, as the discovery sought is not relevant nor proportional to the needs of the case considering the amount in controversy, the importance of the discovery in resolving the issues, and insofar as the burden and/or expense outweighs any likely benefit to Plaintiff. Additionally, Plaintiff has failed to articulate a good faith basis for the sought after discovery.

### III.  Use-Of-Force, PRBM And Strip-Search Protocols

Plaintiff previously asked the Court to order Defendants to produce these records as relating to Plaintiff's claims against Individual Defendants.[3] The Court has not yet ruled on their relevance to Plaintiff's individual claims. However, in the interim, the Court asked Plaintiff to first, elaborate upon his Monell claims, then consider whether and to what extent these records are relevant to the Monell claims. As discussed during the December 12, 2016, conference, Monell discovery has not yet commenced in this action.[4] What follows is Plaintiff's explanation, which I drafted after Defendants review the rest of this

---

[3] Plaintiff has argued that these protocols are relevant to individual liability because to the extent they require creation of records, Plaintiff will know to request those specific records. This shows one way that the request for the protocols "is reasonably calculated to lead to the discovery of admissible evidence." Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991). In addition, Plaintiff has argued that to the extent that Defendants fall short of standards set by protocols designed to protect individuals' constitutional rights through departmental training, this tends to provide support for Plaintiff's claim that a Defendant acted unreasonably when s/he diverged from the protocols' instructions and that that is relevant to any claim that that Defendant might make as to qualified immunity.

[4] On the subject of bifurcation, as stated previously, Plaintiff was under the impression that Monell discovery had been bifurcated. Plaintiff is not opposed to the unification of discovery relating to individual and Monell liability in this case but would serve additional Monell-specific document requests were we to follow that approach. The time required for Defendants to respond would then become another reason in support of Plaintiff's suggestion in Section IV that the discovery deadline be extended.

letter, and so with respect to this Section III, Defendants will share their position with the Court during conference.

Plaintiff has principally pleaded what might be called City of Canton Monell claims in this action, i.e., failure to train, supervise and/or discipline. In sum and substance, and as described in detail in Plaintiff's Second Amended Complaint, certain Defendants in this case engaged in serious misconduct known to the City Defendant prior to Mr. Nelson's arrest and assault, yet the City Defendant's response was to unreasonably fail to adequately train, supervise and/or discipline these Defendants. Knowing this, a reasonable jury could plausibly find that the City Defendant's unreasonable failure to train, supervise and/or discipline Defendants proximately caused Defendants' violation of another individual's constitutional rights at a later moment. And the Defendants did in fact violate another individual's constitutional rights—Mr. Nelson's.

Plaintiff also alleges that he has pleaded viable Monell liability in the event that a final policymaker, even on a single occasion, failed to impose training, supervision and/or discipline upon an Individual Defendant. See City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). What I mean is that even supposing that the City Defendant had a theoretically constitutionally sound policy in place for training, supervising and/or disciplining misbehaving officers for the purpose of stopping the future violation of another individual's civil rights, Monell liability is still present here because final policymaking bodies, officials, or some combination thereof, plainly failed to apply any such policy in appropriate instances here when circumstances called for it, which failure proximately caused the violation of Mr. Nelson's rights.[5]

It should be noted that one of Mr. Nelson's Monell failure-to-train/supervise/discipline theories calls to mind the Second Circuit case Walker v. City of New York, 974 F. 2d 293 (2d Cir. 1992), in which the Court suggested that at times an officer defendant's misconduct is so out-of-the-ordinary or egregious (for example, perjury), a municipality cannot be expected to have known that inadequate training or supervision could have stopped it. Id. at 295-298. However, here, it should be noted that Defendants' disciplinary histories show what Mr. Nelson believes to be unusually egregious misconduct that did place the City Defendant on notice that training/discipline/supervision was needed to prevent what happened to him here. Or, relatedly, Mr. Nelson believes that the City Defendant, seeing the nature of some of the historical misconduct, should have known that training and/or discipline would have been insufficient and certain Defendants should not have been permitted to have contact with the general public.

With that preamble, I hope that it is clear why the Defendants' disciplinary records, which will show whether and to what extent training/supervision/discipline policy was followed at all stages,

---

[5] One way in which a final policymaker's single decision might subvert an otherwise theoretically sound policy is at the close of a disciplinary investigation and prosecution when a disciplinary recommendation is made. The undersigned has seen situations in which a guilty disposition is entered; a sentence recommended; and then, the final policymaker declines to impose any sentence whatsoever, which failure to discipline then becomes credible but-for cause for the defendant's subsequent violation of another individual's rights.

including those involving final policymakers, are relevant to individual liability and Monell claims in this case.

Moving on to the question of the protocol records' relevance to Plaintiff's City of Canton Monell claims, Plaintiff will begin by using the requested strip-search protocols as an example. The Fourth Amendment requires that individualized reasonable suspicion apply to accused felons and misdemeanants upon arrival at a local correctional facility. See Atwater v. City of Lago Vista, 532 U.S. 318, 324 (2001) (stating that the need to perform a strip search were diminished when an arrestee is jailed alone then released on bond). In this case, Defendants subjected Mr. Nelson to a strip search with no articulable suspicion that he had contraband on his person, without any imminent introduction of him into a housing unit with other people, and without knowing whether he would meet bond (assuming that the DA's Office was going to agree to prosecute) and, furthermore, an officer as highly ranked as a Lieutenant was present for the violation of Mr. Nelson's rights. Mr. Nelson would thus like to test whether the City Defendant had proper training protocols in place to educate its Individual Officers as to Mr. Nelson's rights vis-à-vis the strip search. Furthermore, insofar as Defendants' disciplinary indices indicate that they were alleged to have performed unlawful searches in the past, Mr. Nelson contends that this further supports the relevance of the strip-search protocol's content in the event these previous unlawful search allegations were similar in kind (something that will be learned from the summary reports).

The same analysis extends to explain the request for the PRBM records. Even if the Court holds that the PRBM protocols are not relevant to Plaintiff's claims of Defendants' individual liability as previously argued, Plaintiff contends that the PRBM protocols can be used to support his Monell claim in the event that he establishes the predicate individual rights violation. In other words, supposing that a jury finds that Defendants falsely arrested Mr. Nelson after falsely stating that he served as Moody Lewis's lookout, Mr. Nelson would argue to the same jury that the City Defendant's PRBM policies and practices, to the extent that they permitted officers discretion in using non-PRBM in undercover or informant operations or in how they documented the use of PRBM, caused the rights violation by allowing Defendants with known misconduct on their records a situation in which they could easily manipulate undercover or informant representations about an individual's criminal actions without corroborating evidence. In other words, again we see how Defendants' disciplinary records are often intertwined with the City protocol records vis-à-vis Plaintiff's efforts to make a case about the City Defendant's deliberate indifference to a known need to ensure officer reliability and truthfulness in undercover operations generally and specifically here.

The use-of-force protocols are also relevant to the Monell claim. Again, the City Defendant knew of an obvious need to train, supervise and discipline in this case. One of the Defendants who was a primary actor in the use of force against Mr. Nelson was sued for using force so excessive against an arrestee in a 2012 incident, the arrestee suffered a limb amputation. Mr. Nelson argues that in light of that incident alone, which was the subject of substantial press attention, the City Defendant was on notice that that Individual Defendant would likely violate another individual's rights in the same way such that a failure to sufficiently train that individual would give rise to Monell liability when the inevitable rights violation did come to pass. Disciplinary records will show whether the Individual Defendant was trained with respect to the proper use of force at all in the aftermath of the 2012 incident. Assuming, arguendo, that he was, a related, relevant question is the adequacy of that training, which is why the protocols are relevant to the Monell claim.

### IV. Pretrial Schedule Deadlines

Finally, insofar as the Honorable Judge Nathan referred this case to Your Honor for all pretrial matters, including the pretrial schedule, the Court previously discussed with the Parties whether and to what extent they may need a modification of the fact discovery deadline.

The Parties have conferred and we jointly request that the Court extend the fact discovery deadline presently in place by two months, until March 30, 2017. The reasons for the requested adjournment is multifold. First, as discussed herein, Plaintiff will be serving a subpoena for Moody Lewis records very shortly upon the DA's Office and the Criminal Court, and these entities will need time to respond. Next, whatever the Court's and the Parties' ultimate approach to the disciplinary records discussed in this letter, Defense Counsel will need time to prepare production of those records. At the same time, Plaintiff's Counsel would like to have those records prior to deposing the subject officers.[6] Thus, it seems reasonable to infer that the Parties will not begin the Individual Defendants' depositions until early February 2017 at least. Then, the reason the Parties suggest that March 30, 2017, is an appropriate date for the close of fact discovery is because the Party Depositions may give rise to additional discovery requests, and the March 30, 2017, date will leave room for that material to be produced without having to return to the Court for additional extension.

Sincerely,

*Ryan Lozar*

Ryan Lozar
Attorney for Plaintiff

---

[6] The same is true for other categories of records, some of which are mentioned in this letter, e.g., the Kel and/or chain-of-custody records.